IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MOWA BAND OF CHOCTAW INDIANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 07-0508-CG-B |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the court on defendant's motion to dismiss (Doc. 12), plaintiff's brief in opposition (Doc. 32), defendant's reply (Doc. 37), plaintiff's motion to continue (Doc. 29), and defendant's opposition to plaintiff's motion to continue (Doc. 38). For reasons that will be explained below, the court finds that the matter should not be continued and, therefore, plaintiff's motion requesting continuance will be **DENIED**. The court also finds that plaintiff's claims were filed beyond the six year statute of limitations set forth in 28 U.S.C. § 2401(a) and are barred. Accordingly, defendant's motion to dismiss is due to be **GRANTED**.

**BACKGROUND**

On April 28, 1988, the "Mobile-Washington County Band of Choctaw Indians of South Alabama" ("the MOWA") petitioned the Board of Indian Affairs for Federal Acknowledgment as an Indian tribe. (See Amended Complaint - Doc. 36, ¶ 36). On December 17, 1997, the Assistant Secretary-Indian Affairs issued a Final Determination denying the MOWA's petition for acknowledgment. The MOWA filed an appeal before the Interior Board of Indian Appeals,

1

but its appeal was denied on August 4, 1999. (Doc. 36, ¶ 55). However, the Interior Board of Indian Appeals sent one issue, concerning the appropriate burden of proof to be applied in the decision, to the Assistant Secretary for Indian Affairs. (Doc. 36, ¶ 56). On November 26, 1999, the Assistant Secretary declined to order reversal of the final determination. (Doc. 36, ¶ 56; Doc. 12, Ex. 1). The MOWA initiated this suit on July 17, 2007, seeking: 1) a declaration that it is an Indian Tribe to be recognized by the Bureau of Indian Affairs pursuant to the Treaty of Dancing Rabbit Creek, 2) review of the decisions of the Bureau of Indian Affairs denying the MOWA Federal Acknowledgment, and 3) a declaration that the MOWA is entitled to back payments of all federal monies that would have been paid to it if it had received Federal Acknowledgment. (Doc. 1). The MOWA later amended its complaint, asserting only its first two claims and omitting its claim for back payments. (Doc. 36).

## DISCUSSION

Defendant seeks dismissal of this action asserting that plaintiff's claims exceed the six year statute of limitations set forth in 28 U.S.C. § 2401(a)[1] and additionally that Count III should be dismissed because it seeks damages in excess of the jurisdictional limit set forth in the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Plaintiff did not respond to defendant's claim that Count III should be dismissed and appears to have abandoned the claim in its amended complaint. Therefore, defendant's motion is due to be granted as to plaintiff's claim that the MOWA is entitled to back payments.

---

[1] Section 2401(a) provides, in pertinent part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

Plaintiff asserts in its motion to continue that defendant's motion should be converted to a motion for summary judgment because defendant attached exhibits supporting its argument to the motion. Plaintiff contends that it needs to conduct discovery to fully respond to defendant's motion for summary judgment. The exhibits to which plaintiff refers consist of the August 4, 1999, decision of the Interior Board of Indian Appeals, denying the MOWA's appeal and a November 26, 1999, letter from the Assistant Secretary informing the MOWA that the Assistant Secretary declines to order reversal of the final determination. In addition to these documents, defendant has now also submitted a third exhibit which consists of a letter, dated August 30, 2001, from the Bureau of Indian Affairs stating that the decision not to acknowledge the MOWA group as an Indian tribe became final on November 26, 1999, and detailing the procedural history of the MOWA's petition. Generally, the scope of review on a motion to dismiss is limited to the four corners of the complaint. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted). Submission of evidence outside of the pleadings generally requires conversion of a Rule 12(b)(6) motion into a motion for summary judgment. Property Management & Investments, Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985). However, defendant's motion seeks dismissal pursuant to Rule 12(b)(1), rather than 12(b)(6). Even under 12(b)(6) "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). The first two documents submitted by defendant are central to the plaintiff's claims and are referenced in the complaint. These documents represent two of the decisions of which plaintiff seeks review. There does not appear to be any dispute over the authenticity of the documents.

As such, the court could properly consider these exhibits on a 12(b)(6) motion without converting the motion into a motion for summary judgment. In the instant case, defendant seeks dismissal for lack of subject matter jurisdiction pursuant to 12(b)(1). Such motions may not be converted into motions for summary judgment because a grant of summary judgment is a decision on the merits and the merits cannot be reached if the court lacks jurisdiction. Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 n. 6 (11th Cir. 2001) (citations omitted). Facts outside the pleadings may be considered when determining whether the court has subject matter jurisdiction. Id. (citation omitted). Thus, the court will not convert defendant's motion to dismiss into a motion for summary judgment.

In response to defendant's assertion that this court lacks subject matter jurisdiction because plaintiff's claims exceed the six year statute of limitations set forth in 28 U.S.C. § 2401(a), plaintiff argues first that Count I asserts a new argument that was not part of the determination by the Bureau of Indian Affairs. However, regardless whether the basis for the claim is new, resolution of plaintiff's claim requires the court to determine whether plaintiff should receive Federal Acknowledgment. The determination by the Bureau of Indian Affairs that plaintiff is not entitled to Federal Acknowledgment is at issue as plaintiff seeks a decision by this court which would directly conflict with the conclusion of the Bureau of Indian Affairs. The fact that the relief sought by plaintiff is a declaration, does not change the nature of its claim. The Declaratory Judgment Act does not confer an independent basis for plaintiff's claim but merely defines the scope of declaratory relief available. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Congress has delegated to the Executive Branch management and regulation of Indian affairs. 25 U.S.C. §§ 2, 9; 43 U.S.C. §

4

1457.  Although this court may review the actions taken by the Bureau of Indian Affairs in appropriate cases, the court will not consider claims for Federal Acknowledgment prior to plaintiff's exhaustion of those claims with the proper agencies.

Plaintiff's second argument is that the statute of limitations has never been applied to Bureau of Indian Affairs decisions in Federal Acknowledgment petitions.  However, plaintiff offers no reason or authority why § 2401(a) should not apply, except that plaintiff has been unable to find a case where it has been applied.   The court's research reveals that § 2401(a) has been applied to actions or decisions of the Bureau of Indian Affairs.  For instance in Urabazo v. U.S., 947 F.2d 955  (Table only) (10th Cir. 1991), the Court found § 2401(a) applied to a complaint which sought a declaration of the following:

> (1) that the BIA is not authorized to make independent determinations of Indian blood quantum; (2) that the "BIA exercised its purported authority to make the decision affecting Plaintiff's enrollment with the Wichita Indian Tribe by improper and illegal application of 25 C.F.R. Part 62;" and (3) that "the BIA's determination of Plaintiff's [Indian] blood quantum for any purpose is void ab initio." [concerning Federal Acknowledgment of tribes.]

Ibid. at 1991 WL 213406, *1.  Indian tribes are not exempt from § 2401(a)'s application. Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 592 (9th Cir.), cert. denied, 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990) (citations omitted).  Thus, the court finds that § 2401(a) applies to suits regarding Bureau of Indian Affairs decisions in Federal Acknowledgment petitions.

Plaintiff next argues that there is a material issue of fact as to when the statute of limitations began to run.   Plaintiff submitted the affidavit of Cedric Sunray, a MOWA tribal linguist, who states that he attempted to telephone the Bureau of Indian Affairs several times from 2001-2004 attempting to get information on the status of its appeal, but that no one ever told him

that the process was over. (Doc. 31, Ex. 1). Mr. Sunray states that in 2005 he spoke to Congressman Joe Bonner about the matter, but that Bonner could not get him an answer. In 2005, Sunray also attempted to set up a meeting with Lee Fleming, the Director of the Office of Federal Acknowledgment of the Department of Interior, but Mr. Fleming did not show up. According to Sunray, it was not until May 17, 2005, that Fleming came to tribal headquarters and told plaintiff that it had no more recourse through the Bureau of Indian Affairs. Plaintiff also submitted the affidavit of Chief Wilford Taylor, who states that in 2000, he spoke with Kevin Gover, the Assistant Secretary of Indian Affairs about the MOWA having been denied recognition and that Mr. Gover never indicated that its appeal was over. (Doc. 31, Ex. 2). In December 2000, Taylor met with Gover and others to discuss how to proceed. Mr. Gover told Taylor that Gover would be leaving office in a month and that he would need to take the matter up with the next Assistant Secretary that was appointed. The affidavits of Verma Reed and Craig Taylor also state that at the meeting with Gover, Gover indicated that he would be unable to do anything because he was leaving office soon and that they should pursue the matter with the new Assistant Secretary. (Doc. 31, Exs. 3 & 4). Reed and Taylor further aver that they were never told that the process was over until Fleming informed them of such on May 17, 2005. The court does not find such facts are sufficient to keep the statute of limitation from running.

     Plaintiff knew that a final determination had been issued and was informed that on November 26, 1999, the Secretary rejected any further reconsideration of the final determination. The Secretary stated in his letter to plaintiff that even the issue referred to him by the Board involved a technical question and that "[t]he Final Determination makes clear that the evidence did not under any standard establish that the MOWA was descended from a historical Indian

tribe." (Doc. 12, Ex. 1 p. 2). The Secretary expressly informed the MOWA that "[f]urther review "would not change the result reached in the Final Determination and in the Board decision against Federal acknowledgment." (Id.). The Secretary went on to state the following:

> Further, the MOWA was accorded an ample opportunity to be heard and to make its case for Federal Acknowledgment before the BAR, the Assistant Secretary and the Board. The MOWA submitted its petition for Federal Acknowledgment on April 28, 1988. It submitted additional information on November 8, 1991 in response to a notice from the BIA that the petition had "obvious deficiencies" in making a case for Federal acknowledgment. Following the Assistant Secretary's issuance of a proposed finding against acknowledgment on January 5, 1995, the MOWA submitted a response on July 1, 1996. The MOWA also submitted a petition for reconsideration to the Board following the Assistant Secretary's Final Determination against Federal acknowledgment. The MOWA, therefore, has been accorded a full opportunity to be heard before the Department."

(Id. at pp 2-3). Later correspondence, dated August 30, 2001, from the Bureau of Indian Affairs, further confirms that the November 26, 1999, letter from the Secretary which declined further reconsideration was effective and final under 25 CFR Part 83 and that the MOWA had been notified that it had exhausted its remedies. (Doc. 37, Ex. 3). The correspondence noted that plaintiff had visited the Assistant Secretary on December 20, 2000, and was told "that the MOWA group has exhausted the Secretary's Departmental procedures and due process under 25 CFR Part 83." (Id.). The 2001 letter stated that "[a]t this time, the only options available to the MOWA group in seeking Federal recognition as an Indian tribe are either through Congressional legislation or through a court's decision..." (Id.). The court finds it is clear that the MOWA's right of action accrued upon receipt of the November 26, 1999, letter from the Bureau of Indian Affairs.[2] As such, the statute of limitations began to run on November 26, 1999, more than six

---

[2] Plaintiff has not asserted that there was any delay in receipt of that letter and according to the 2001 correspondence, the MOWA was again informed of the finality of the decision on December 20, 2000. Even this later date is more than six years before this suit was initiated, on

years prior to the initiation of this action.

Plaintiff also asserts that defendant should be estopped from asserting the statute of limitations. Plaintiff argues that estoppel is appropriate because Fleming never told the MOWA it had no further recourse until May 17, 2005. To prevail on a claim for equitable estoppel under federal common law, the plaintiff must prove:

> (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

National Companies Health Ben. Plan v. St. Joseph's Hosp. of Atlanta, Inc., 929 F.2d 1558, 1572 (11th Cir.1991) (citations omitted), abrogated on other grounds by, Geissal v. Moore Medical Corp., 524 U.S. 74, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998). Estoppel does not apply to the facts of this case. Plaintiff was clearly on notice of the decision that it was not entitled to Federal acknowledgment and had been notified of the finality of that decision. Moreover, plaintiff has not shown that defendant intended to misrepresent the true facts or that defendant intended for plaintiff to rely on any misrepresentations to its detriment. "As a general rule, a plaintiff relying on the doctrine of fraudulent concealment must show affirmative actions by the defendant constituting concealment." Hill v. Texaco, Inc., 825 F.2d 333, 335 (11th Cir. 1987) (citations omitted). Plaintiff contends that despite numerous attempts, it was unable to obtain information from defendant about its petition. However, as discussed above, the November 26, 1999 letter clearly informed plaintiff that the denial of its petition was final and that the MOWA

---

July 17, 2007.

had exhausted its remedies with the Bureau of Indian Affairs. "The standard for a discovered wrong is a minimal one: Any fact that should excite his suspicion is the same as actual knowledge of his entire claim." Id. (citation and internal quotations omitted). Plaintiff was on notice of the denial of its petition and was notified of the finality of that decision. Ignorance of the effect of that decision is not cause for estoppel, as it was plaintiff's duty to discover the facts that form the basis of its claim. See Morton's Market, Inc. v. Gustafson's Dairy, Inc., 198 F.3d 823, 832 (11th Cir. 1999) ("To avail themselves of [the doctrine of equitable tolling], plaintiffs have the burden of proving at trial that the defendants concealed the conduct complained of, and that [plaintiffs] failed, despite the exercise of due diligence on [their] part, to discover the facts that form the basis of [their] claim." (citation and internal quotations omitted)).

Finally, plaintiff asserts that § 2401(a) does not bar this action because the limitations period was tolled. Federal courts have tolled the commencement of a limitations period on a claim against the United States in two circumstances: (1) when the United States concealed its wrongdoing so the plaintiff did not know and in the exercise of due diligence could not learn of his injury; and (2) when the plaintiff's injury was "inherently unknowable." See Menominee Tribe of Indians v. United States, 726 F.2d 718, 721 (Fed. Cir. 1984); United States v. Sams, 521 F.2d 421, 429-30 (3d Cir. 1975). There is no evidence that defendant concealed any wrongdoing such that plaintiff was not aware of its claim. The facts were all available and clearly knowable.

## CONCLUSION

For the reasons stated above, plaintiff's motion to continue to allow discovery (Doc. 29) is

**DENIED**.  The court finds that plaintiff's claims were filed beyond the six year statute of limitations set forth in 28 U.S.C. § 2401(a) and are therefore barred.   Accordingly, defendant's motion to dismiss (Doc. 12) is **GRANTED** and this action is hereby **DISMISSED**.

**DONE and ORDERED** this 2nd day of July, 2008.

/s/   Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE